UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT ANDERSON,

      Plaintiff,

  v.

SHERIFF OF COOK COUNTY, et al.,

      Defendants.

No. 10 CV 2353

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Robert Anderson suffered a stroke while detained at the Cook County Jail in 2010. He sued a correctional officer (Frank Fite), Cook County, and the Sheriff of Cook County (the latter in his official capacity), for deliberate indifference to Anderson's medical needs. The defendants moved for summary judgment. For the reasons discussed below, defendants' motion is granted as to the claim against Officer Fite and the policy claim based on blood-pressure monitoring. The remaining policy claim was voluntarily dismissed without prejudice, and is not addressed here.

**I.    Legal Standard**

Summary judgment must be granted where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. *Kvapil v. Chippewa Cnty., Wis.*, 752 F.3d 708, 712 (7th Cir. 2014) (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In reviewing a summary-judgment motion, a court construes all facts, and draws all reasonable inferences from those facts, in favor of the non-moving party. *United States v. P.H. Glatfelter Co.*, 768 F.3d 662, 668 (7th Cir. 2014) (quoting *Laskin v. Siegel*, 728 F.3d 731, 734 (7th Cir. 2013)).

**II. Facts**

Robert Anderson was an inmate at the Cook County Jail in February 2010. *See* [97] ¶ 1.[1] On the evening of February 28, Anderson's vision became blurry, he began to slur when speaking, and he felt pain in the back of his neck. *See* [97] ¶ 16; [106] ¶ 19; March 31, 2011 Deposition of Robert L. Anderson, [83] at 17, Tr. at 62:15–:19. Anderson typically felt pain in the back of his head when his blood pressure was elevated (Anderson was hypertensive); so he asked the correctional officer on duty, Frank Fite, if Fite could get a nurse to check Anderson's blood pressure. *See* [97] ¶ 16; [106] ¶¶ 1, 18, 20. It was around 9:30 or 10:30 at night, and Fite, whose eight-hour shift was due to end at 11:00 p.m., asked Anderson why he'd waited until the shift change to complain about his blood pressure. *See* [97] ¶ 17; Anderson Deposition, [83] at 17, Tr. at 63:2–:4, 63:19–:23; April 29, 2011 Deposition of Frank Fite, [86] at 8, Tr. at 8:1–:3. Anderson replied that he had only recently noticed the headaches, blurred vision, and slurred speech, and Fite (according to Anderson) then said that he would send a nurse in. *See* [97] ¶ 17; [106] ¶ 21;

---

[1] Bracketed numbers refer to entries on the district court's docket; referenced page numbers are from the CM/ECF header placed at the top of filings.

Anderson Deposition, [83] at 17, Tr. at 63:6–:9. But a nurse didn't come to see Anderson that night. *See* [97] ¶ 17.

The next day, a sergeant came into Anderson's ward, and Anderson told the sergeant about his symptoms. *See* [106] ¶ 23; Anderson Deposition, [83] at 17, Tr. at 64:17–:24. Anderson explained that he had spoken the night before with an officer, who had said he would send in a nurse, but the nurse never came. *See* [97] ¶ 18. So the sergeant sent for a nurse, who checked Anderson's blood pressure and scheduled him to see a doctor on March 2, 2010. *See* [97] ¶ 19; [106] ¶ 23; Anderson Deposition, [83] at 17, Tr. at 65:3–:6.[2] Anderson was examined by a physician at the jail on March 2, who in turn referred Anderson to Stroger Hospital. *See* [97] ¶ 20; [106] ¶ 24. When Anderson arrived at Stroger's emergency room (also on March 2), his speech was still slurred, and he was experiencing some weakness on the right side of his body and paralysis on the right side of his face. *See* [97] ¶ 31; [106] ¶¶ 25–27. A physician at Stroger concluded that Anderson had suffered a stroke and, upon discharge, would need a cane to walk. *See* [106] ¶ 29.

Anderson sued Officer Fite under 42 U.S.C. § 1983 for deliberate indifference to Anderson's medical needs. *See* [33] ¶¶ 1, 25(c).[3] Anderson also brought claims

---

[2] Anderson disputes that the nurse took his blood pressure on March 1, 2010, as there are no records indicating that she did so. *See* [97] ¶ 19; [106] ¶ 22. In his deposition, however, Anderson testified that the nurse did check his blood pressure, *see* [83] at 17, Tr. at 64:15–65:4, and although Anderson couldn't recall if this was on March 1 or 2, *see id.*, Tr. at 64:18–:20, other facts in the record suggest that it was indeed on March 1, *see id.*, Tr. at 65:3–:6 (testifying that the nurse arranged for Anderson to see a doctor "the next day"); [106] ¶ 24 (stating that Anderson saw a physician at the jail on March 2, 2010).

[3] Anderson also named an "Officer Hilburon" (whose real name is Hillburger, *see* [82] at 5) as a defendant to his deliberate-indifference claim, but agrees that the claim against

3

against Cook County and the Sheriff of Cook County, in his official capacity, based on: (1) an alleged failure to create adequate blood-pressure-monitoring procedures for detainees; and (2) an alleged policy of failing to provide detainees with needed medications. *See id.* ¶¶ 3, 14, 25(a)–(b). The medications claim was dismissed at Anderson's request (and without objection), as this claim will be resolved in a related class-action suit (where Anderson is a member of the class). *See* [108]; [110].[4] Defendants move for summary judgment on the remaining claims against them. [80].

## III. Analysis

### A. The Policy Claim Against the Sheriff and Cook County

Anderson's complaint alleged that neither the Sheriff nor the County maintained adequate procedures for checking inmates' blood pressures, thus creating a widespread practice of deliberate indifference to detainees' medical needs. But in his brief opposing summary judgment, [96], Anderson neglected to address any of defendants' arguments, [82] at 10–14, concerning this claim. The claim is therefore waived, and defendants' motion for summary judgment on the blood-pressure-monitoring claim is granted. *See Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016) (citing, *inter alia*, *Bonte v. U.S.*

---

Hillburger should be dismissed, *see* [96] at 1. Defendants' motion for summary judgment, [80], is therefore granted as to Hillburger.

[4] The present case was stayed for several years beginning in August 2012 due to the pendency of the class action, *Parish v. Cook County*, 07 CV 4369 (N.D. Ill.), and the latter's potential impact on this suit. The parties eventually agreed to resume litigating this case, but absent the medications-based policy claim, which has since been dismissed without prejudice for resolution in *Parish*.

4

*Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)); *Bonte*, 624 F.3d at 466 ("Failure to respond to an argument . . . results in waiver." (citing *United States v. Farris*, 532 F.3d 615, 619 (7th Cir. 2008); *Williams v. REP Corp.*, 302 F.3d 660, 667 (7th Cir. 2002))).

### B. The Claim Against Officer Fite

Anderson's second claim is a deliberate-indifference claim against Officer Fite in his individual capacity. A prison official is deliberately indifferent to a prisoner's right to medical care, and thus violates the prisoner's Eighth Amendment right to be free from cruel and unusual punishment, where: (1) the prisoner suffers from an objectively serious medical condition; and (2) the official is aware of the condition but knowingly disregards it. *See Conley v. Birch*, 796 F.3d 742, 747 (7th Cir. 2015) (quoting *Ortiz v. Webster*, 655 F.3d 731, 734 (7th Cir. 2011)); *see also id.* at 746 ("[D]eliberate indifference . . . require[s] a reckless disregard of a substantial risk to [the] inmate['s] health." (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994))) (internal quotation marks and brackets omitted). In cases where prison officials "delayed . . . medical assistance to an inmate, the plaintiff must offer verifying medical evidence that the delay (rather than the inmate's underlying condition) caused some degree of harm." *Id.* at 749 (quoting *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013)) (internal quotation marks omitted); *see also Williams v. Liefer*, 491 F.3d 710, 714–15 (7th Cir. 2007) (citations omitted).

Because Anderson was a pre-trial detainee and not a convicted prisoner, his deliberate-indifference claim arises under the Due Process Clause of the Fourteenth

5

Amendment rather than the Eighth Amendment; but the governing standards are the same. *See Smith v. Sangamon County Sheriff's Department*, 715 F.3d 188, 191 (7th Cir. 2013) (citations omitted). Officer Fite does not dispute that Anderson was in this case suffering from a serious medical condition. Fite instead argues that there is no proof that he was aware of this condition, or, even if he was aware, that he knowingly ignored it. Fite also argues that there is no evidence of harm caused by any delay on his part.

Officer Fite first contends that there is no evidence suggesting he was aware of Anderson's medical issues on February 28, 2010. It was Fite's practice, he says, to record inmates' requests for medical attention on medical-service request forms, *see* [97] ¶ 24; and the medical-request logbook contained no entries for Anderson on March 1, 2010, *see id.* ¶ 29. But the March 1 logbook entries are not dispositive. Anderson says he spoke with Fite on February 28, not March 1. And Fite does not dispute (for purposes of summary judgment) that he did speak with Anderson, and that Anderson described his symptoms and asked for medical attention, at that time. This is enough for a jury to find that Fite knew Anderson was suffering from, or at least claimed to have been suffering from, headaches, blurred vision, and slurred speech.[5]

---

[5] In his reply brief, Fite implies that he may have disregarded some of Anderson's symptoms—namely, the headaches and blurry vision—because Fite had no way of knowing if Anderson was actually experiencing those symptoms. *See* [105] at 4; *id.* at n. 3. This is no answer to Anderson's claims. Defendants to claims of deliberate indifference may not in general avoid liability simply by stating, "I thought the plaintiff was malingering." If Fite had reason to believe that Anderson was feigning illness—and, consequently, that there was in fact no serious risk of harm to Anderson's health—there is no evidence of this in the

6

Fite argues that these symptoms were insufficient to alert him to the severity of Anderson's medical condition. Anderson's condition, in other words, was not "objectively" serious enough to warrant a response by Fite. A jury could reasonably disagree. Fite may not have recognized Anderson's headaches, blurred vision, and speech problems as indicators of a particular medical problem—*i.e.*, a stroke—but a reasonable adult, even without medical training, would have understood that Anderson was suffering from some neurological problem that should not have been ignored. *See Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (explaining that objectively serious medical conditions include not only those diagnosed by a physician as requiring treatment, but also those "so obvious that even a lay person would perceive the need for a doctor's attention" (citing *Foelker v. Outagamie County*, 394 F.3d 510, 512–13 (7th Cir. 2005))).

Fite next asserts that there is no evidence showing that it was he who ignored Anderson's request for help. Perhaps, argues Fite, it was the nursing staff who neglected to follow up. This argument, too, is unavailing. The record indicates that: Anderson described his symptoms to Fite and asked Fite to get a nurse to come check his blood pressure; Fite said he would do so; but no nurse actually came. Viewing these facts in Anderson's favor, a reasonable jury could conclude that Fite knew Anderson was headed for serious trouble, told him that he would help, but did

---

record. *Cf. Riccardo v. Rausch*, 375 F.3d 521, 528 (7th Cir. 2004) (explaining that "a prisoner's bare assertion is not enough to make the guard subjectively aware of a risk [where] *the objective indicators do not substantiate the inmate's assertion*") (emphasis added).

7

not actually request medical assistance—and thus made a deliberate choice to ignore Anderson's plight.

Where the evidence falls short is causation—that is, in showing that the delay in obtaining medical assistance actually caused the plaintiff some harm. *See Williams*, 491 F.3d at 714–15. Expert testimony may satisfy this requirement, but mere evidence of a plaintiff's ultimate diagnosis and treatment may also be sufficient if it suggests that the delay in obtaining that treatment "exacerbated the plaintiff's condition or otherwise harmed him." *Id.* at 715 (citation omitted); *see also Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) (quoting *Williams*, 491 F.3d at 715). Anderson relies on his diagnosis and treatment at Stroger Hospital to show that the two-day delay in bringing him to the hospital caused him an injury for which he may recover under Section 1983.[6]

Anderson argues in particular that, as in *Williams v. Liefer*, the delay in notifying medical staff of his symptoms prolonged or exacerbated his pain and high blood pressure. *See* [96] at 10 (citing 491 F.3d at 716); *Williams*, 491 F.3d at 716 (affirming the district court's denial of judgment as a matter of law on the plaintiff's deliberate-indifference claim). But unlike in *Williams*, where the plaintiff was eventually given nitroglycerin to relieve his chest pain and hypertension, *see* 491 F.3d at 715–16, the record here evidences no such treatment by hospital staff. Anderson's discharge papers indicate that doctors at Stroger Hospital performed a

---

[6] Anderson was given leave to disclose an expert in response to defendants' motion for summary judgment, *see* [85], but chose not to present one. Anderson chose instead to rely on the *Williams* opinion, as discussed below. *See* [96] at 8 n. 2.

8

CT scan, MRI, and other diagnostic tests, and that, as of March 4, 2010, Anderson was still experiencing some slurred speech and mild weakness on the right side of his body, and would "probably [need to] restart [his blood-pressure] medications later." [97] at 114. There is no indication that anyone at Stroger actually treated Anderson for high blood pressure, or relieved any pain or suffering related to the stroke. Indeed, Anderson told his physicians at Stroger that, by March 2 (when Anderson was admitted to the hospital), his symptoms had already started to improve. *See* [106] ¶ 28.

The Stroger records, in other words, do not show any exacerbation of Anderson's condition from the delay in obtaining medical attention. Nor is there is any verifying medical evidence that, had Officer Fite responded to Anderson's complaint on February 28, the doctors at Stroger could have done anything to alleviate Anderson's discomfort or to increase his chances of making a full recovery from the stroke.[7] Anderson elected to rely solely on the Stroger records, but they shed no light on any incremental harm that may have been caused by the delay in this case. Defendants' motion for summary judgment on the claim against Officer Fite is therefore granted.

---

[7] An online resource, for example, discusses tissue plasminogen activator, which dissolves clots and enhances blood flow to the brain, and so may improve a patient's chances of recovering from a stroke if administered within three hours of when the stroke occurs. *See* http://www.strokeassociation.org/STROKEORG/AboutStroke/Treatment/StrokeTreatments_UCM_310892_Article.jsp#.V3l0u_krKJB (last visited July 6, 2016). But it would not be proper to deny summary judgment based on this internet research, which remains untested by the parties, and which in any event has no clear application to the jail context (where a number of variables may influence the timing and efficacy of tPA treatment).

## IV. Conclusion

Defendants' motion for summary judgment, [80], is granted. Anderson's policy claim based on a widespread failure to provide inmates with needed medications has been dismissed without prejudice, [110], and remains pending in the related class action. Enter judgment and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 7/6/2016